Gary O. JOHNSON and Roxanne S. Johnson, Plaintiffs and Appellees,

v.

Charles SCHMITT and Margaret M. Schmitt, Defendants and Appellants.

No. 13241.

Supreme Court of South Dakota.

Argued May 21, 1981.

Decided Sept. 2, 1981.

Thomas L. Trimble of Sieler, Trimble & Crawford, and David P. Olson, Rapid City, for plaintiffs and appellees.

George A. Bangs of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for defendants and appellants.

MORGAN, Justice.

This appeal proceeds from a judgment in favor of plaintiffs Gary and Roxanne Johnson (appellees, or individually as Gary J. and Roxanne J.) against defendants Charles and Margaret Schmitt (appellants, or individually as Charles S. and Margaret S.). Appellees received damages as follows: for wrongful interference with contract (Count I), $15,000 compensatory and $5,000 punitive; for assault and battery (Count II) Gary J. alone recovered $100 compensatory and $500 punitive from Charles S. but not Margaret S.; for conversion (Count III) $75 compensatory from Charles S. alone. Based on the evidence, the trial court ordered a remittitur of $8,643.09 on Count I. We deal with appellants' arguments severally and affirm the trial court.

Appellants are the developers of a subdivision, "The Niche," located in Meade County, South Dakota, within the environs of Rapid City. Although appellees had purchased a lot from appellants on which they located a mobile home, appellants retained control of the water supply and sold water to the various owners of subdivision property.

A Homeowner's Association existed to aid in the management of streets, utilities and common areas. Gary J. was an officer of the association. Animosity arose between appellants and appellees when the Homeowner's Association sued appellants over the water supply.

Subsequently, appellees attempted to sell their property. Eva Miller (Miller) and Clifford Borden (Borden) became interested in purchasing the property. Charles S., however, had threatened to cut off water services to any purchaser. The real estate broker with whom the property was listed attempted to mediate and secure a sure water supply from appellants for the buyers. To this end, he negotiated a deal. Appellees were to pay appellant $1500 for a hookup fee from an escrow account established with the sale proceeds. Charles S. and Gary J. accepted these terms in a letter which both signed. Later a contract for sale of the property was signed between appellees and the buyers. Appellants, appellees and the buyers signed another agreement which provided that the buyers would not be involved in any dispute between appellants and appellees, and could take title to the property free and clear subject only to their common obligation as water users in the subdivision. In anticipation of the closing, the buyers deposited the purchase money in escrow with the broker.

Prior to the closing date, however, an altercation occurred between Charles S. and Gary J. After a near collision on the service road to the property, Charles S. sprayed mace in the face of Gary J. This was the basis for the assault and battery action. Immediately thereafter, Charles S. telephoned the buyers and refused water service to Gary J.'s property. The buyers backed out of the sale and recovered their money from the broker. This was the basis

for the interference with contract action. After appellees had moved to Rapid City, Charles S. went to the mobile home, removed the water meter and took it into Rapid City, ostensibly, to have it tested. This was the basis for the conversion count.

■ We first examine the issue regarding appellants' liability for interference with contract. By motion for directed verdict and proposed instruction, appellants urged the trial court to hold that they had a right to withhold the water from the buyer and therefore could not be liable for interference. The legal theory on which appellants relied is stated in Restatement (Second) of Torts § 773, at 52.

> One who, by asserting in good faith a legally protected interest of his own or threatening in good faith to protect the interest by appropriate means, intentionally causes a third person not to perform an existing contract or enter into a prospective contractual relation with another does not interfere improperly with the other's relation if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction.

The trial court ruled on appellants' motion for directed verdict as follows:

> The court is going to take the position that the [appellant] by retaining the water and sewer right, when he developed this property, and charging a monthly fee for water and sewer service, became obligated then to furnish water and sewer to those people in that development, on a reasonable basis, with no discrimination as to any of the people in that subdivision.

Appellants also proposed instruction to the jury in the following form:

> You are instructed that [appellants] have an absolute right to sell or not to sell water to any person. You are further instructed that there is no liability for procuring a breach of contract where such breach is caused by the exercise of an absolute right, that is, by an act which a person has a definite legal right to do.
>
> Accordingly if you find from the evidence that [appellees'] proposed sale of property to [Miller] fell through because [appellants] refused to sell water to [Miller], your verdict should be for the [appellants] and against the [appellees] on Count One.

The trial court refused this proposed instruction without further comment.

Although the legal theory is valid, we do not find it applicable to the facts of this case. We do not have to examine the trial court's theory of appellants' obligation to furnish water on a reasonable basis without discrimination because clearly the record supports an obligation to furnish water to prospective purchasers of Gary J.'s property by a written agreement. Charles S. and Gary J. signed a letter from the broker to Charles S. It contained the following terms:

> Dear Mr. Schmitt,
>
> As per our conversation on the 23rd of September, concerning the water hookup fee of $1500.00 on Gary & Roxanne Johnson's property.
>
> Mr. & Mrs. Johnson have agreed to pay $1500.00, which will be paid from our office on the date of the sale, which is to be about the 20th of October, 1978.
>
> Your check will be issued prior to Mr. & Mrs. Johnson receiving their check for the proceeds of the sale.
>
> As per our agreement, would you please sign this letter indicating your acceptance of these terms.

Charles S. and Gary J. each signed on the appropriate lines at the foot of the letter.

Apparently, appellants agree that the above letter eliminated any absolute right because on appeal the thrust of their argument is that absent payment or tender of the hookup fee the contractual obligation was unenforceable, and insufficient to support a claim for interference. We disagree, however, with appellants' major premise that the hookup fee was not paid or tendered. The agreement provides for payment on or about October 20, 1978. The sale proceeds, from which the fee was payable, were deposited in escrow with the broker as specifically provided in the letter. These acts were payment or tender in accord with the provisions of the agreement.

Appellants cite no legal authority to the contrary. Moreover, the record reflects that Charles S. did not call the buyer to renege on the agreement because the fee had not been paid or tendered.

Next we examine appellants' issues concerning the measure of damages for wrongful frustration of the contract. The trial court instructed the jury in the following manner:

One who is liable to another for interference with a contract or prospective contractual relation is liable for damages for: 1. The pecuniary loss of the benefits of the contract or the prospective relation; 2. consequential losses for which the interference is a legal cause.

Appellants urge, without citation of any authority, that the proper measure of damages should be the difference between the contract price and the fair market value on the date of frustration. This measure of damages sounds more in contract than in tort which is the genre of appellees' action for wrongful interference.

■■■ The trial court's instruction quoted above was taken almost verbatim from the Restatement (Second) of Torts § 774A, on damages for interference with contract. Absent any authority to support appellants' contention, we adhere to the measure of damages promulgated in the *Restatement.*

■■■ The main thrust of appellants' argument on the damage issue, however, brings us to comment c of the *Restatement:* the admission into evidence of an economist's testimony as an expert witness to establish the amount of appellees' damages. In comment c the reporter notes, "A major problem with damages of this sort is whether they can be proved with a reasonable degree of certainty." Id., at 55.

The testimony in question was adduced from Richard J. Ellerbach, an assistant professor of economics at South Dakota School of Mines and Technology, a financial management consultant. Generally, the testimony was centered on the appellants' lost profits. Ellerbach compared the actual sale of the property on a contract for deed dated November 11, 1979 [1] to the original terms between Gary J. and Borden which called for cash payment. After considerable foundation testimony as to his assumptions and methodology, the expert testified that in his opinion the loss was in the amount of $6,337.69 in "actual" dollars or $4,832.50 in "net present value" May 1980 dollars. Appellants made numerous objections during the course of the testimony the methodology employed in the computations. On appeal, their argument is that the testimony was totally inadmissible for all the reasons urged before the trial court.

Under SDCL 19–15–2, opinions of experts are admissible, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." This section is identical to Rule 702 of the Federal Rules of Evidence. The Eighth Circuit Court of Appeals dealt with similar objections in *Taenzler v. Burlington Northern,* 608 F.2d 796, 798 n. 3 (8th Cir. 1979), when it stated,

[T]he rule for admission of expert testimony does not depend on the relative certainty of the subject matter of testimony, but rather on the assistance given by the expert testimony to the trier of fact in understanding the evidence or determining a fact in issue. Moreover, the relative weakness or strength of the factual underpinning of the expert's opinion goes to weight and credibility, rather than admissibility. The trial court's decision to admit such expert testimony may not be overturned unless manifestly erroneous. (citations omitted).

In this instance, the trial court correctly instructed the jury as to expert testimony, pointing out:

In determining the weight to be given such opinion, you should consider the

---

1. Subsequent to commencement of suit and prior to trial, the appellees sold the property on a contract for deed for $25,000, payable $2000 down, assumption of mortgage indebtedness in the amount of $11,382.16, and payment of the balance with eight percent interest per annum in monthly installments.

qualifications and credibility of the expert and the reasons given for his opinion. You are not bound by such opinion. If you should conclude the reasons given in support of the opinion are not sound, or that the opinion is outweighed by other evidence, you may disregard the opinion entirely.

The jury returned a verdict for $15,000 compensatory and $5,000 punitive damages on Count I, so we are unable to assess the impact of the opinion evidence. Appellants moved for a new trial on the grounds that the excessive verdict appeared to have been given under the influence of passion or prejudice and the trial court granted remittitur of $8,643.09. Appellants did not raise on appeal the issue of failure to grant a new trial.

We are of the opinion that the trial court did not err in admitting the expert testimony. Appellants' counsel, in extensive cross-examination, attacked the basis for and the methodology of the expert's testimony and argued in the same vein to the jury. The points that he raises on appeal go to the weight and credibility of the testimony rather than to its admissibility.

The trial court heard two motions to sever on the same day. One joint motion by both Charles S. and Margaret S. sought to sever the action for conversion (Count III). Another motion, solely on behalf of Margaret S., apparently sought severance of Count II for assault and battery.[2] Although the trial court denied these motions, it granted Margaret S. partial relief based on the hearing and agreement of counsel. The trial court severed the issue of damages pertaining to Margaret S. on Count II and Count III. Since the motion for new trial dealt solely with prejudice to Margaret S., only that portion of the severance order affecting Margaret S. is preserved for appeal. SDCL 15–26A–9. We hold that the record supports the trial court's refusal to fully grant Margaret S.'s motion for severance.

Margaret S.'s motion alleged that inclusion of Count III (conversion) would prejudice her trial on Count I (interference with contract). The jury awarded compensatory damages of $75 for the conversion. Apparently, it did not find enough evidence to support allegations of oppression, fraud or malice, since no punitive damages were awarded on this count. Although the $75 award exceeds the $53.50 value of the water meter taken by Charles S., Gary J. himself reinstalled the meter and the complaint sought recovery of $100. Apparently, the claim included his time and labor as consequential damages. Moreover, the $75 award was less than his total claim. The trial of Margaret S. was not prejudiced by refusing to sever Count III for conversion.

Next, we consider whether Margaret S.'s right to a fair trial was prejudiced by not severing Count II for assault and battery. The severance of Count II, however, is a *non sequitur* since the allegedly prejudicial evidence would be admissible in trial of Count I, even if the trial court had granted severance of Count II. The evidence proving Charles S.'s assault and battery on Gary J. infers Charles S.'s malice and intent to interfere with a contractual relationship for which Margaret S. is jointly liable. Although the assault and battery and the actual refusal to supply water occurred at different times on the same day, the assault and battery were part of the sequence of acts preceding the interference. Accordingly, we hold that joinder of Count II for assault and battery did not prejudice the trial of Margaret S. for interference with a contractual relation.

We affirm the judgment.

All the Justices concur.

---

2. Although the motion expressly asked to sever "Count III," this reference must have been a typographical error. The motion's second paragraph asserts that joinder of such count with Count I and Count III would result in prejudice. Moreover, it averred that Count II did not allege that Margaret Schmitt participated in the assault and battery.