MORRIS EPSTEIN *v.* GENEVIEVE CARRIER ET AL.
(5861)

SPALLONE, DALY and STOUGHTON, Js.

Argued October 15—decision released December 8, 1987

*Charles L. Howard,* with whom, on the brief, was *Muslima Galeta,* for the appellants (defendants).

*John C. Archambault,* for the appellee (plaintiff).

STOUGHTON, J. The defendants appeal from a judgment ordering the defendant Barbara Carrier Block to pay attorney's fees and to convey certain premises to the plaintiff.

The plaintiff, Morris Epstein (Epstein), is a real estate broker in Colchester, and the defendant Genevieve C. Carrier (Carrier) was the owner of real property which had belonged to her husband's family for several generations and which came to her under the will of her deceased husband by certificate of devise dated December 7, 1964. The will contained the following paragraph: *"First:* After my lawful debts are paid, I give to my beloved wife, Genevieve C. Carrier, my house and property consisting of house, garage and about (45) acres

of land, located in North Westchester, Connecticut. I will this property to her in the hope that in her will she will pass it on to our daughter, Barbara. Also to my beloved wife, Genevieve C. Carrier, all my personal property.'' The defendant Barbara Carrier Block (Block) is the daughter of the defendant Carrier and is the Barbara referred to in paragraph First of the will.

In 1984, the defendant Carrier was a resident of a home for the elderly and desired to sell the property because of some concern over her ability to meet her expenses. At that time, and on the date of the certificate of devise, the property consisted of substantially fewer than 45 acres. On October 15, 1984, Epstein and Carrier entered into an agreement under which Epstein was to purchase the property, consisting of 14 acres more or less, for $40,000, and Carrier was to convey by warranty deed on or before January 15, 1985.

After Block learned of the agreement, she spoke to her mother and asked to purchase the property herself. She instituted a legal action in which she sought to enjoin the sale, alleging that she had a vested remainder interest in the property, or, alternatively, that Carrier had received the property in trust. On July 15, 1985, Block purchased the property from Carrier.

Epstein instituted this action against Carrier and Block. In an amended complaint, he alleged in the first count that the conveyance from Carrier to Block caused him monetary damage. The second count alleged irreparable damage with no adequate remedy at law. The third count alleged that Block intentionally interfered with the performance of his contract with Carrier, that the defendants acted outrageously and maliciously with wilful disregard of his rights and intending to cause him financial loss, and that he has suffered damages. He requested a decree directing specific performance by Carrier, damages, an order compelling Block to con-

vey the premises to him, and punitive damages. Each of the defendants filed an answer in which she admitted some of the allegations of the complaint and denied others. Carrier interposed five special defenses. She alleged that Epstein breached their agreement by failing to deliver the survey before January 15, that it had éxpired and time for performance was not extended, that it was null and void for mutual mistake, that it was unenforceable because it was impossible to convey by warranty deed, and that Epstein fraudulently induced her to enter into the agreement by misrepresenting the amount of land involved. Block interposed four special defenses. She alleged that she was justified by virtue of her relationship to Carrier and the special value of the land in pursuing any action necessary to secure her property interests, that she possessed an absolute privilege to accept the deed from Carrier to protect a bona fide property interest, that she did not act tortiously, and that the agreement had expired.

After a trial to the court, the trial judge issued a lengthy memorandum of decision in which he made a detailed finding of facts. These findings include those which are set forth hereinafter. Epstein and Carrier entered into a contract for the sale and purchase of 14 acres, more or less, in Colchester. The agreement provided for a closing on or before January 15, 1985, but did not contain any language indicating that time was of the essence or that the time factor was of serious consequence to either party. The agreement, in fact, specifically provided for an automatic thirty days extension of the closing in the event the buyer was unable to obtain zoning approval for three building lots. In late. December, 1984, Epstein furnished a preliminary map to Carrier's attorney. This preliminary survey indicated two or three acres of land in which there might have been some question as to the boundaries. It also indicated that there were approximately twenty-two acres

in the parcel. Carrier's attorney was dissatisfied with the preliminary survey and did not feel that he could prepare a proper legal description. On January 14, 1985, Carrier's attorney wrote to Epstein's attorney that he was ready to discuss scheduling the closing but still sought a survey accurate enough to prepare a legal description. Carrier sought a higher price to reflect the additional acreage, but Epstein refused to pay the additional price and Carrier agreed to sell the property for $40,000. Epstein's attorney and Carrier's attorney agreed on or about January 18, to modify the purchase agreement to provide for conveyance by quitclaim deed. On January 24, the attorneys for the parties agreed to convey the property according to the ancient description by quitclaim deed, and Epstein waived any and all contingencies regarding subdivision, zoning, etc. A tentative closing date of February 7 was agreed to, and Carrier's attorney prepared a quitclaim deed and an adjustment sheet. On February 6, Block commenced a legal action against Epstein and Carrier, asserting that Carrier was only a life tenant and that Block had a vested remainderman interest. Also on February 6, Block had Epstein served with a notice of lis pendens. The lawsuit and the recorded lis pendens prevented Carrier from conveying a marketable title and put Carrier and Epstein on notice that Block claimed a remainderman interest. On July 15, Carrier executed a quitclaim deed to Block for $50,000 and a hold harmless and indemnification agreement by Block in favor of Carrier. On July 19, Block unilaterally withdrew her lawsuit against Carrier and Epstein. On February 6, Epstein's attorney telephoned Carrier's attorney that the lis pendens and lawsuit had been served and that a closing could not take place as scheduled on February 7. Block testified that she first learned of the contract between Carrier and Epstein on December 23, 1984. She testified that she initiated the lawsuit against

her mother and Epstein to stop the sale and to help keep the property in the family by purchasing it from her mother. She said that on January 7, she called her mother to ask her mother to let her buy the land to keep it in the family, and that she approached her mother again on January 13.

The trial court reached the following conclusions which it expressed in its memorandum of decision. The sole purpose for the legal action brought by Block was to prevent the sale from Carrier to Epstein. Block did not have a bona fide and sincere belief that she was in fact the vested remainderman. This conclusion was drawn from Block's offer to purchase and subsequent purchase at a price in excess of that offered by strangers, the unilateral withdrawal of the Block action, and Block's willingness to execute a hold harmless and indemnification agreement. From these findings, the court drew the ultimate conclusion that Block tortiously interfered with the contract between Carrier and Epstein. The court also concluded that each of the defendants had failed to prove any of their special defenses. The court found that because time was not of the essence in the contract between Epstein and Carrier, and because Epstein was a defendant in the Block action until July 15, 1985, the contract had not expired due to the passage of time. Because the value of the land had increased, the court found no basis for damages except as to attorney's fees. It rendered judgment against Block in the amount of $7089.13, Epstein's attorney's fees, and ordered Block to convey the property to Epstein by quitclaim deed for the sum of $39,000 less damages of $7089.13, or $31,910.87, subject to normal tax adjustments.

The defendants claim that the court erred: (1) in concluding that Block tortiously interfered with the agreement to buy between Epstein and Carrier; (2) in concluding that the agreement to buy had not expired

even though more than a reasonable amount of time had elapsed since the scheduled closing and Epstein had failed to request an extension of time; and (3) in ordering specific performance since such an order results in Epstein's receiving a greater interest than he would have received under the agreement to buy and precludes Block from asserting her interest in the parcel.

## I

In the defendants' first claim of error, they raise four sub-issues. The first of these issues is whether the court erred in concluding that the filing of Block's action and the recording of a lis pendens prevented the closing on the agreement to buy. The finding of the court was that the lawsuit, together with the recorded lis pendens, prevented Carrier from conveying a marketable title and put Carrier and Epstein on notice that Block claimed a remainder interest. The defendants correctly point out that an agreement was reached to modify the original agreement and provide for conveyance by quitclaim deed, and the court so found. The Block lawsuit, expressly sought, inter alia, an order restraining and enjoining Carrier from selling, tranferring or disposing of all or any part of the property pending disposition of the action. She could hardly have done more in her attempt to prevent the sale to Epstein. Even though Epstein had been willing to accept a quitclaim deed, there is no finding that Carrier was willing to convey the property to him by any form of deed in the face of the lawsuit by Block. Epstein was named as a defendant in the Block lawsuit, and it flies in the face of reason to suggest that the modified agreement should have been carried out on his payment of $39,000 for a quitclaim deed under the circumstances.

The second of the sub-issues raised by the first claim of error is that the court erred in finding that Block improperly interfered with the agreement to buy by

bringing the action and by recording the lis pendens. Block contends that she had a sincere belief in the merits of her action because she believed that the property was to be her inheritance, and that this belief immunized her from any action based on a theory of intentional interference with a contractual relationship. The burden of showing that the interference was privileged or justified in this case was on the defendant Block. *Cosgrove Development Co.* v. *Cafferty,* 179 Conn. 670, 670 n.1, 427 A.2d 841 (1980); *Harry A. Finman & Son, Inc.* v. *Connecticut Truck & Trailer Service Co.,* 169 Conn. 407, 415, 363 A.2d 86 (1975). Block pleaded justification in her first special defense and privilege in her second special defense. The court found that she had failed to prove either of these special defenses. We cannot retry the facts, which is essentially what this defendant asks us to do. The trial court was free to believe or disbelieve all or any part of the testimony of the witnesses. The trial court clearly could have disbelieved the assertions of the defendant Block that she thought she had acquired an interest in the property under her father's will, while believing that she wanted to keep the property in the family. This is consistent with the conclusion that her sole purpose in bringing the action against Epstein and Carrier was to prevent the sale from Carrier to Epstein.

In the third sub-issue, Block claims that the court erred in finding that she acted in bad faith based on the terms of the settlement of her action against Epstein and Carrier. Block relies upon the holding in *Blake* v. *Levy,* 191 Conn. 257, 464 A.2d 52 (1983). In *Blake,* the Supreme Court held that the tort of intentional interference with business relations, like the tort of vexatious litigation, cannot be maintained when the underlying lawsuit the propriety of which is at issue terminated in a good faith negotiated settlement. Block asserts that the trial court could not, as a matter of

law, draw any adverse inference from the withdrawal of the action, payment of a purchase price in excess of that offered by Epstein and execution of the indemnity agreement, because they were all part of a negotiated settlement. The trial court was not obligated to believe that the settlement was a good faith negotiated settlement, however, particularly in light of the relationship between Block and Carrier and the professed belief of Carrier that the modified agreement had expired by June, 1985. The trial court found that Block testified that she initiated the lawsuit against her mother and Epstein to stop the sale and to help keep the property in the family by purchasing it. The court also found that Block testified that twice in January, 1985, which was after she knew of the Epstein agreement, she asked her mother to let her buy the land. The test of whether interference with business relations is tortious is whether the actor's behavior is improper. *Blake* v. *Levy,* supra, 261. The conclusions that Block did not have a bona fide and sincere belief that she was, in fact, the vested remainderman, and that she had tortiously interfered with the contract between Carrier and Epstein, must stand if they are legally and logically correct and if they find support in the facts set out in the memorandum of decision. *Cookson* v. *Cookson,* 201 Conn. 229, 243, 514 A.2d 323 (1986). Under this test, those conclusions must stand.

In their fourth sub-issue, the defendants claim that the purchase of the property by Block cannot constitute tortious interference with the modified agreement between Carrier and Epstein because that agreement had expired prior to the purchase. This argument depends upon the assertion that the agreement had expired, which is contrary to the conclusion reached by the trial court and is discussed below.

## II

The second of the defendants' three main claims is that the court erred in concluding that the agreement to buy had not expired. The defendants correctly observe that when time is not of the essence to a contract to convey land, the time for performance is a reasonable time following the time for performance set forth in the contract. *Fullerton* v. *McGowan*, 6 Conn. App. 624, 629, 507 A.2d 473 (1986). The defendants claim that more than a reasonable time for performance had elapsed by the time Carrier conveyed to Block in July, 1985, and that since Epstein had not requested an extension of time after the closing scheduled for February had been cancelled, the modified agreement had expired. There is no merit to the argument that Epstein could have accepted a quitclaim deed from Carrier at any time, and no evidence that a quitclaim deed was offered to him after February 7, 1985. As the trial court observed, Block should not be able to bring an action for the purpose of preventing the sale and then claim that the agreement for the sale which she had prevented had expired due to lapse of time. The conclusion of the court that the contract had not expired due to passage of more than a reasonable amount of time is amply supported by the facts found.

## III

The defendants' final claim is that the court erred in ordering Block to convey the property to Epstein by quitclaim deed because the order results in the transfer of a greater interest than Carrier had. Block contends that this order is a final adjudication of her rights in the parcel without a full and fair opportunity to litigate those rights. Under the terms of the modified agreement, Epstein would have received all the right, title and interest which Carrier possessed in and to the

premises. If Block had any interest, it would not have been extinguished by a quitclaim deed from Carrier. The court concluded that Block did not have a bona fide and sincere belief that she was, in fact, the vested remainderman of the property, and she withdrew an action in which the question of her rights, if any, might have been determined. Block alleged in one special defense that she was justified in pursuing any action necessary to secure her property interests, and in another that she possessed an absolute privilege in accepting delivery of a deed from Carrier to protect in good faith a bona fide property interest in the premises. The court found that she had failed to prove any of her special defenses, and this necessarily implies that Block had no bona fide property interest in the premises. Nevertheless, she should not now be required to convey more than she received by quitclaim deed from her mother. The judgment is modified to order the defendant, Barbara Carrier Block, to convey by quitclaim deed to the plaintiff, Morris Epstein, all of such right, title and interest in and to the real estate in Colchester, as she received from Genevieve C. Carrier by quitclaim deed dated July 15, 1985.

There is error in part, the judgment is set aside and the case is remanded with direction to render judgment as on file except as modified in accordance with this opinion.

In this opinion the other judges concurred.