**WESTFIELD DEVELOPMENT COMPANY, a California corporation, Louis A. Conter, and James E. Rodgers, Petitioners,**

v.

**RIFLE INVESTMENT ASSOCIATES, a California limited partnership; and Edward L. Clabaugh, Respondents.**

No. 88SC628.

Supreme Court of Colorado,
En Banc.

Feb. 12, 1990.

Rehearing Denied March 5, 1990.

**1114**

Nicholas W. Goluba, Jr., Glenwood Springs, Friedemann & Bronk, Robert A. Merring, Irvine, Cal., and Robinson & Wisbaum, Michael W. Robinson, Costa Mesa, Cal., for petitioners.

Brega & Winters P.C., Charles F. Brega and Margaret C. Gilliam, Denver, for respondents.

Justice ERICKSON delivered the Opinion of the Court.

We granted certiorari to determine whether the recording of a notice of a lis pendens constitutes a privileged statement made in the course of a judicial proceeding and, if such notice is not absolutely privileged, what the proper measure of damages is. The district court awarded substantial damages against petitioner Westfield Development Company (Westfield) in favor of respondent Rifle Investment Associates (RIA), and its general partner Edward L. Clabaugh, based on Westfield's filing of a notice of a lis pendens. In an unpublished opinion, the court of appeals generally affirmed the district court, except for the rate of prejudgment interest. *Westfield Dev. Co. v. Rifle Invest. Assocs.*, No. 87CA0131 (Colo.App. Oct. 27, 1988).

We conclude that under the circumstances here the filing of a notice of lis pendens is not absolutely privileged, but that the district court's judgment is not supported by sufficient findings of fact and conclusions of law. We also find that the court of appeals correctly decided the issue of prejudgment interest. Accordingly, we affirm the judgment of the court of appeals in part and reverse in part and remand with directions.

I.

On October 15, 1980, Westfield brought suit against RIA and Clabaugh, seeking specific performance of an alleged contract for the sale of a 150 acre tract of land owned by RIA and located northeast of Rifle, Colorado. At the same time, Westfield filed a notice of lis pendens describing the RIA property and the nature of the lawsuit. C.R.C.P. 105(f). Clabaugh and RIA filed a counterclaim against Westfield, and named petitioners James E. Rodgers and Louis A. Conter as additional defendants to the counterclaim, C.R.C.P. 13(h). Rodgers was the president of Westfield, a California corporation, and Conter was an officer of Westfield and a partner in Westfield's operations in Colorado. The counterclaim alleged intentional interference with contract, malicious prosecution, and abuse of process.

The district court found the following facts. RIA was a limited partnership organized under the laws of California, and was the owner of a 150 acre tract of land near Rifle. Clabaugh was the only general partner, and as a limited partner he owned about 80% of the limited partners' interest. In February 1980, Clabaugh, on behalf of RIA, contacted Occidental Land, Inc. about a sale of the property, but Occidental was not at first interested. Clabaugh also contacted Westfield which expressed some interest in purchasing the land.

In July 1980, Occidental approached Clabaugh, and negotiated for the purchase of the Rifle property. On July 23, 1980, Clabaugh sent Occidental a draft of a sales contract for the land. Then, on July 28, 1980, as a result of negotiations between Clabaugh and Conter, Clabaugh received a letter and proposed contract for the purchase of the same property drafted by an attorney for Westfield. The proposed contract was not signed and it contained the following clause:

IN WITNESS WHEREOF, the Purchaser [Westfield] has executed this contract as of the ___ day of July, 1980. Upon Seller's [RIA's] acceptance of this Contract as noted by Seller's execution on this page of the Addendum, this Agreement shall constitute a binding contract

between the parties hereto in accordance with the terms hereof.

The stated purchase price in the proposed contract was $1,200,000. Clabaugh did not sign the proposal. He redrafted it using the same language increasing the purchase price to $1,650,000, but did not sign the contract. Clabaugh's proposal also contained the clause set out above and was received by Westfield on the same day, July 28, 1980.

Although he recognized that Clabaugh had changed the purchase price, as president of Westfield, Rodgers signed the proposal on the evening of July 28, and gave it to Mike Howell, Westfield's in-house counsel, for transmission to Clabaugh the next day. Conter talked to Clabaugh on the morning of July 29 about some proposed changes in the agreement and Clabaugh indicated that he would think them over. However, about 2:00 o'clock that afternoon, Clabaugh's office received a letter from Occidental purporting to accept Clabaugh's offer to sell the property to them, along with a check for $25,000 as a deposit. After consulting with his Colorado attorney, Clabaugh sent a Western Union telegram to Westfield which said: "Rifle Investment Associates hereby revokes and rescinds any offer it may have made to you to sell to you our property in Rifle, Colorado."

Howell telephoned Clabaugh on the afternoon of July 29, 1980 and said he was bringing over the agreement. Clabaugh told him not to bother since there had been a change in circumstances and he could not sign it. At 5:15 p.m. that afternoon Western Union delivered the telegram from Clabaugh to Westfield by telephone. The following day, July 30, Clabaugh's office received a letter from Westfield stating that it was transmitting a copy of the contract "[i]n accordance with your [Clabaugh's] written acceptance on July 28, 1980 of our [Westfield's] offer...."

After some further haggling, a contract was executed and signed by RIA and Occidental on August 7, 1980 for the purchase of the property for $1,500,000. Realizing that Clabaugh and RIA did not intend to sell the property to Westfield, and after discovering the existence of the contract between RIA and Occidental, Rodgers authorized attorneys for Westfield to file suit in Colorado seeking specific performance of the claimed contract between Westfield and RIA.[1] Suit was filed on October 15, 1980, and a notice of lis pendens was recorded in Garfield County.

After suit and notice of lis pendens was filed, Occidental backed out of its contract for sale of the property, apparently taking the position that the title to the property had become unmerchantable. RIA returned the $25,000 deposit to Occidental and treated the contract as at an end.

At a bifurcated bench trial in April 1981, the district court first held that there was no contract between Westfield and RIA for the sale of the property because the intent of the parties was for RIA to sign the proposal before it could become a binding agreement, and neither RIA nor Clabaugh signed it. The petitioners have not appealed that ruling. The counterclaim was tried by the court in October and November 1986. On December 11, 1986, the district court awarded judgment in favor of RIA against the petitioners for $1,894,659.32 actual damages, including $747,860 prejudgment interest, and $150,000 exemplary damages. The court also awarded Clabaugh $150,000 in actual damages for emotional distress. Factual findings supporting the recovery of damages were not set forth with the required specificity in the district court's decision.

Except for the prejudgment interest, the court of appeals affirmed, stating:

> There was evidence that the three plaintiffs interfered with RIA's contract, and the filing of the lis pendens was unjustified. As to the issue of damages, while the evidence could have supported

---

1. Westfield's original complaint also sought an injunction barring the sale of the property, and damages in the amount of $500,000 from both RIA and Clabaugh. Westfield withdrew its requests for injunctive relief and damages before the specific enforcement demand came to trial.

a contrary finding, the record does support the trial court's conclusion that the economic losses to RIA and Clabaugh had been incurred and that their efforts to mitigate damages were proper. *Westfield Dev. Co.*, No. 87CA0131, slip op. at 2. The district court awarded prejudgment interest at the rate of 9% per year compounded annually pursuant to section 13–21–101(1), 6A C.R.S. (1987). The court of appeals concluded that section 13–21–101 was inapplicable since it only governed damages for personal injuries, not lost profits. *Westfield Dev. Co.*, No. 87CA0131, slip op. at 3. RIA could recover prejudgment interest, but only at the rate of 8% compounded annually under section 5–12–102(1)(b), 2 C.R.S. (1989 Supp.). *Westfield Dev. Co.*, No. 87CA0131, slip op. at 3. The court of appeals remanded for recalculation of the prejudgment interest. *Id.* The respondents have not petitioned for review of the judgment of the court of appeals.

We granted certiorari to consider four issues raised by the petitioners: (1) whether recording a notice of a lis pendens constitutes a privileged statement made in the course of a judicial proceeding; (2) whether the measure of damages in an action for tortious interference with a contract for the sale of real property should be the difference between the contract price and the fair market value of the property as of the date of the wrong; (3) whether the general partner of a limited partnership may be awarded damages for emotional distress in an action for interference with contractual relations; and 4) whether prejudgment interest was properly awarded pursuant to section 5–12–102.

## II.

The petitioners first claim that filing the notice of lis pendens under C.R.C.P. 105(f) is absolutely privileged, and thus may not

be the cause of an award of damages. In their counterclaim, RIA and Clabaugh alleged that the filing of the notice of lis pendens was actionable under any of three theories: intentional interference with contract, malicious prosecution, and abuse of process. We conclude that there is a qualified privilege to file a notice of lis pendens with respect to a claim based on intentional interference with contract, but there is no specific privilege against a claim for malicious prosecution.[2]

### A.

*Intentional Interference with Contract*

 Whether there is a privilege to file a lis pendens which constitutes a defense to an action based on intentional interference with contract is a question of first impression in Colorado. Courts outside the state are split on the issue. Some courts hold that the filing of a notice of lis pendens is absolutely privileged so that an action based on interference with contract will not lie. *E.g., Woodcourt II Ltd. v. McDonald Co.*, 119 Cal.App.3d 245, 248, 173 Cal.Rptr. 836, 838 (1981); *Procacci v. Zacco*, 402 So.2d 425, 426–27 (Fla.Dist.Ct.App.1981); *Lone v. Brown*, 199 N.J.Super. 420, 429, 489 A.2d 1192, 1197 (App.Div.1985); *Griffin v. Rowden*, 702 S.W.2d 692, 695 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). Other state courts have held that there is only a qualified privilege to file a notice of lis pendens. *McReynolds v. Short*, 115 Ariz. 166, 170–71, 564 P.2d 389, 393–94 (Ct.App. 1977); *Epstein v. Carrier*, 12 Conn.App. 691, 696–98, 533 A.2d 1221, 1224–25 (1987); *Guerdon Indus., Inc. v. Rose*, 399 N.W.2d 186, 188 (Minn.App.1987); *Vintage Homes, Inc. v. Levin*, 382 Pa.Super. 146, 155, 554 A.2d 989, 994 (1989); *Toltec Watershed Improvement Dist. v. Johnston*, 717 P.2d 808, 814–15 (Wyo.1986); *see also* Restatement (Second) of Torts § 773 (1979).

The leading case extending an absolute privilege to the filing of notice of a lis

---

**2.** The parties have not briefed the issue of whether the filing of the notice of a lis pendens may ever constitute abuse of process. We there-fore do not reach the issue and express no opinion thereon.

pendens is *Albertson v. Raboff,* 46 Cal.2d 375, 295 P.2d 405 (1956). *Albertson* held that the filing of notice of lis pendens was absolutely privileged against an action based on disparagement of title, but a malicious prosecution claim was not barred. *Id.* at 379–82, 295 P.2d at 409–10. Writing for a unanimous court, Justice Traynor stated:

> [T]he recordation of a notice of *lis pendens* is in effect a republication of the pleadings. The disparagement of title arises, therefore, from the recordation of the notice of *lis pendens* as well as from the pleadings. The publication of the pleadings is unquestionably clothed with absolute privilege, and we have concluded that the republication thereof by recording a notice of *lis pendens* is similarly privileged.

*Id.* at 379, 295 P.2d at 408. The source of the absolute privilege in *Albertson,* therefore, is the "long-established rule that publications made in the course of a judicial proceeding are absolutely privileged" with respect to actions based on personal defamation. *Id.* at 379, 295 P.2d at 408. We agree that the notice of lis pendens constitutes only a republication of the pleadings when the filing has a reasonable relation to the underlying lawsuit and otherwise complies with C.R.C.P. 105(f). However, the policy of encouraging free access to the courts which is the basis of an absolute privilege is outweighed by the intentional and improper interference with contract by means of litigation not brought in good faith. *Cf. Albertson,* 46 Cal.2d at 382, 295 P.2d at 410. We conclude that a party has only a qualified privilege to interfere with an existing contract by means of initiating litigation and filing pleadings and notice of lis pendens.

■ In *Memorial Gardens, Inc. v. Olympian Sales & Management Consultants, Inc.,* 690 P.2d 207, 210 (Colo.1984), we cited with approval the definition of the tort of intentional interference with contract in section 766 of the Restatement (Second) of Torts. *See also Trimble v.*

*City & County of Denver,* 697 P.2d 716, 725–26 (Colo.1985). Section 766 provides:

> § 766. Intentional Interference with Performance of Contract by Third Person
>
> One who *intentionally* and *improperly* interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

(Emphasis added.) The district court did not explicitly find that Occidental breached the contract with RIA. The court found that Occidental "terminated" the contract because of the notice of lis pendens. Apparently, RIA and Clabaugh assumed that the lis pendens rendered the title to the property unmerchantable and this interfered with *their* performance of the contract. Under these circumstances, we believe that the applicable definition of the tort is contained in Restatement (Second) of Torts § 766A (1979), which states:

> § 766A. Intentional Interference with Another's Performance of His Own Contract
>
> One who *intentionally* and *improperly* interferes with the performance of a contract (except a contract to marry) between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him.

(Emphasis added.) The interference must thus be both intentional and improper. In determining whether the interference is improper, we have held that the court must weigh the factors contained in section 767 of the Restatement (Second) of Torts:

> In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, con-

**1118**

sideration is given to the following factors:

(a) the nature of the actor's conduct,

(b) the actor's motive,

(c) the interests of the other with which the actor's conduct interferes,

(d) the interests sought to be advanced by the actor,

(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

(f) the proximity or remoteness of the actor's conduct to the interference and

(g) the relations between the parties.

*Trimble v. City & County of Denver,* 697 P.2d at 726. Even if the interference is intentional, therefore, liability does not attach unless the court concludes that the actor's conduct is also improper. *Id.; Memorial Gardens, Inc. v. Olympian Sales & Management Consultants, Inc.,* 690 P.2d at 210. Viewing the findings of fact and conclusions of law made by the district court in the light most favorable to Clabaugh and RIA, the court did not weigh the factors contained in section 767 of the Restatement and made no finding that the interference by Westfield or the other petitioners was improper.

■ In addition, where the means of alleged interference is the filing of a notice of lis pendens, we believe that a litigant asserting a bona fide claim has a privilege to interfere. Thus, once it has been determined that the interference was intentional, was the cause of the termination of the contract, and caused damage, the interferer may still escape liability by establishing, as an affirmative defense, that he or she was asserting a bona fide claim. *See Epstein v. Carrier,* 12 Conn.App. 691, 696, 533 A.2d 1221, 1224 (1987). Section 773 of the Restatement (Second) of Torts states:

One who, by asserting in good faith a legally protected interest of his own or threatening in good faith to protect the interest by appropriate means, intentionally causes a third person not to perform

an existing contract or enter into a prospective contractual relation with another does not interfere improperly with the other's relation if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction.

The qualified privilege applies when (1) the interferer has, or honestly believes he has, a legally protected interest; (2) the interferer in good faith asserts or threatens to assert it; and (3) the assertion or threat is by proper means. *See McReynolds v. Short,* 115 Ariz. 166, 171, 564 P.2d 389, 394 (Ct.App.1977).

■ Because the district court in this case did not consider whether the interference was improper, or whether there was a qualified privilege to interfere, the court of appeals judgment affirming the district court decision must be reversed. The proceeding should be remanded to the district court for new findings of fact and conclusions of law. If the district court concludes that such findings cannot be made on the record that now exists, a new trial should be granted. Since the remaining issues will arise on remand, we elect to address them now in the interest of judicial economy.

### B.

#### *Malicious Prosecution*

■ The counterclaim also alleged that the filing of the notice of lis pendens constituted the torts of malicious prosecution and abuse of process.[3] Although the district court set out the elements of each tort in its conclusions of law, the court did not find that those elements did or did not exist. The court of appeals did not address this issue below. We have previously held that the filing of notice of lis pendens may be actionable as malicious prosecution. *Johnston v. Deidesheimer,* 76 Colo. 559, 561, 232 P. 1113, 1114 (1925); *see also Albertson v. Raboff,* 46 Cal.2d 375, 382,

---

**3.** See note 2 above.

295 P.2d 405, 410 (1956) (no privilege against action for malicious prosecution for filing notice of lis pendens).

We note, however, that the elements of the torts of intentional interference with contract and malicious prosecution are not the same. Therefore, the damages caused by the conduct constituting each tort may not be identical. If the district court on remand concludes that malicious prosecution has been proved, it should make specific findings with respect to damages.[4]

### III.

The second issue pertains to the proper measure of damages in an action for intentional interference with contract. The district court found that RIA purchased the Rifle property from Milton Warren McPherson in February 1980 for $750,000. The purchase price consisted of $165,000 cash and a promissory note to McPherson for $585,000 secured by a mortgage on the property. Occidental contracted to buy the property from RIA for $1,500,000, but backed out when Westfield filed the notice of lis pendens. Clabaugh negotiated with Union Oil Company for sale of the property, but Union indicated that it needed the property right away and the lis pendens was a barrier to completion of the sale. Union subsequently purchased property nearby owned by Westfield for more than $2,500,000. There was evidence in the record that the Westfield and RIA properties were comparable.

The district court found that as a result of its dismissal of the complaint on April 2, 1981, the lis pendens was no longer in effect.[5] Nevertheless, despite efforts to sell the property, and offers to buy that were rejected by RIA, the property remained unsold until May 1982. At that time, Exxon Corporation announced that it was closing its oil shale project in the area and real estate values plummeted, making RIA's property unmarketable. The district court found that RIA's efforts to sell the property were reasonable. The McPherson mortgage was foreclosed in March 1985.

In computing damages, the district court calculated the profit RIA lost when the Occidental contract fell through by first subtracting $7,500 RIA received when it sold a one and a half acre tract to a third party from the McPherson purchase price ($750,000), for a subtotal of $742,500. This amount was then subtracted from the $1,500,000 Occidental contracted to pay, for a total of $757,500 in lost profit. The court then determined that RIA lost the use of the money it would have received as a profit on the sale of the land and that the value of the loss should be computed at 9% compounded annually for a total of $747,-860.[6] The district court also found that RIA suffered an additional $389,299.32 in

---

4. We also note that a malicious prosecution claim that arises out of the main action may not usually be brought as a counterclaim since the main action has not yet terminated in favor of the counterclaimant. *See Donovan v. Gingerbread House, Inc.*, 536 F.Supp. 627, 632 (D.Colo. 1982). Although it is true that the district court found in favor of RIA and Clabaugh on the main claim in April 1981, we have located no C.R.C.P. 54(b) certification in the record. Without such certification, the judgment against Westfield on their claim for specific performance was not final until the counterclaims were adjudicated. It does not appear that the petitioners advanced this defense however, and, in any event, no appeal was taken by Westfield on its specific performance claim and the judgment against Westfield on the main action is now final.

5. The parties all assume that the court's April 1981 judgment on Westfield's claim caused the notice of lis pendens to terminate thirty days later. In April 1981, C.R.C.P. 105(f) provided that "[a] notice of lis pendens filed as provided by law shall remain in effect for thirty days from the time of entry of final judgment in the trial court." Rule 105(f) was substantially amended effective July 1, 1981. In the absence of a C.R.C.P. 54(b) certification the April 1981 judgment on Westfield's claim would not be a final judgment. See note 4 above. However, since no one has argued that the notice of lis pendens continued in effect until December 1986, when the counterclaims were decided, we assume for purposes of this opinion that the notice terminated in May 1981.

6. The correctness of this calculation of prejudgment interest is examined in Part VI below.

consequential damages [7] for a total of $1,894,659.32 in actual damages.

■ Westfield and the other petitioners contend that the district court used the wrong measure of damages. They claim that the damage suffered by RIA as a result of the termination of the sales contract is the difference between the contract price and the fair market value of the property on either the date of the wrongful conduct, or, at the latest, when the notice of lis pendens was removed in May 1981. While this may be the appropriate measure of damages in a breach of contract action, intentional interference with contract is a tort. The measure of damages may therefore depart from contractual damages when necessary to make the innocent party whole. *See Hein Enters., Ltd. v. San Francisco Real Estate Investors*, 720 P.2d 975, 981 (Colo.App.1985); *see also Ross v. Holton*, 640 S.W.2d 166, 173 (Mo.App.1982) (damages for intentional interference with contract not measured by contract rules); *Johnson v. Schmitt*, 309 N.W.2d 838, 841 (S.D.1981) (same).

■ In *Trimble v. City and County of Denver*, 697 P.2d 716, 730 (Colo.1985), and *Memorial Gardens, Inc. v. Olympian Sales & Management Consultants, Inc.*, 690 P.2d 207, 212 (Colo.1984), we referred with approval to the measure of damages set out in section 774A(1) of the Restatement (Second) of Torts. Section 774A(1) provides:

(1) One who is liable to another for interference with a contract or prospective contractual relation is liable for damages for

(a) the pecuniary loss of the benefits of the contract or the prospective relation;

(b) consequential losses for which the interference is a legal cause; and

(c) emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference.

There was sufficient evidence in the record for the district court to have concluded that the filing of the notice of the lis pendens rendered the property unmerchantable and destroyed any market there might have been for it, rendering the concept of market value meaningless. *See Askari v. R & R Land Co.*, 179 Cal.App.3d 1101, 1111, 225 Cal.Rptr. 285, 292 (1986).

The record also supports the inference that there existed only a very limited number of buyers that would be able to use the property in the most economically efficient and profitable form, such as Occidental and Union. Westfield sold such a tract of land to Union satisfying Union's needs, and thereby decreased the number of potential buyers. After the notice of lis pendens was lifted in 1981 the district court found that RIA exercised reasonable efforts to mitigate its damages by trying to sell the property. In May 1982, the bottom fell out of the market. Under these unique circumstances, we cannot say that the district court erred in measuring the damages caused by an intentional interference by loss of profit rather than the difference between contract price and the largely meaningless concept of market value.

## IV.

The petitioners also argue that emotional distress damages may not be awarded to Clabaugh on a claim for intentional interference with contact for two reasons. First, the district court did not award Clabaugh any other damages, and emotional distress damages may not be awarded in the absence of some other form of dam-

---

7. The court calculated these additional consequential damages as follows:

| | |
|---|---|
| $165,000.00 | (down payment lost upon foreclosure) |
| 168,328.49 | (interest paid on McPherson note) |
| 5,600.00 | (expenses incurred in attempting to sell property in 1981 and 1982) |
| $ 41,370.83 | (reasonable attorney fees incurred in having lis pendens removed) |
| 9,000.00 | (property taxes and other costs related to ownership of land) |
| $389,299.32 | |

ages. Second, Clabaugh, as the general partner of a limited partnership, may not be awarded any damages at all since he was not a party to the contract allegedly interfered with.

■ As a general rule, emotional distress damages may be recovered in an action for intentional interference with contract, *Trimble v. City & County of Denver*, 697 P.2d at 730, but only "if they are reasonably to be expected to result from the interference." Restatement (Second) of Torts § 774A(1)(c) (1979). In this court, the petitioners have not contended that the emotional distress allegedly suffered by Clabaugh was not "reasonably to be expected to result from the interference." Nor have they claimed that the evidence was insufficient to support the district court's award for emotional distress. We therefore assume for the purpose of this opinion that both of these conditions have been met.

A.

■ The petitioners argue that emotional distress damages may only be awarded when there are other damages proved, and may not be the sole element of damages. Thus, since the district court awarded Clabaugh damages for emotional distress only, and not any pecuniary damages, the award cannot stand. In *Tose v. First Pennsylvania Bank, N.A.*, 648 F.2d 879, 898 (3d Cir.1981), *cert. denied*, 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1982), the court held that Pennsylvania would read Restatement (Second) of Torts § 47 in conjunction with section 774A(1) and deny damages for emotional distress by itself in an action for intentional interference with contract unless the plaintiff also proved damages for pecuniary harm or actual harm to reputation. We find *Tose* distinguishable in two respects.

First, Clabaugh testified without contradiction that he personally paid most of the attorney fees incurred in defending the specific performance action brought by Westfield. The district court awarded damages to RIA for these attorney fees. Because Clabaugh was the sole general partner and majority limited partner it can be said that he proved that he suffered pecuniary damages in addition to emotional distress.

Second, we have previously held that damages for emotional distress in Colorado may be awarded in a breach of contract action when the breach is willful and wanton. *Trimble v. City & County of Denver*, 697 P.2d at 731. In *Trimble* we said:

As stated by the original court of appeals of Colorado, 'in cases where a breach of contract has occurred and the acts attending such breach are accompanied by willful, insulting or wanton conduct of the one guilty of the breach, *substantial damages may be recovered for mental suffering only ....*" *Hall v. Jackson*, 24 Colo.App. 225, 228, 134 P. 151, 152 (1913). *Accord Rederscheid v. Comprecare, Inc.*, 667 P.2d 766 (Colo.App.1983); *Farmers Group, Inc. v. Trimble*, 658 P.2d 1370 (Colo.App.1982).

697 P.2d at 731 (emphasis added). *See also McCreery v. Miller's Groceteria Co.*, 99 Colo. 499, 503, 64 P.2d 803, 805 (1937) (where breach of contract was willful and wanton it was within rule allowing recovery for emotional distress alone); *Fitzsimmons v. Olinger Mortuary Ass'n*, 91 Colo. 544, 550, 17 P.2d 535, 537 (1932) (same). It would be anomalous to permit the award of emotional distress damages alone for the willful and wanton breach of a contract, but deny them for intentional and improper acts committed without legal justification that cause the breach of the contract. In *Hall v. Jackson*, 24 Colo.App. 225, 228, 134 P. 151, 152 (1913), the court of appeals stated:

In cases of pure tort, where no contractual relations exist and the acts complained of are attended with willful and wanton conduct on the part of defendant, substantial damages may be recovered for mental anguish and suffering only, though no physical injury or pecuniary loss is suffered by plaintiff.

We conclude, therefore, that a party is not barred from seeking damages for emotional distress only in an action for intentional interference with contract. *See also Mooney v. Johnson Cattle Co.*, 291 Or. 709, 634 P.2d 1333 (1981) (holding that emotional distress damages may be the sole element of damage in a proper intentional interference with contract action).

## B.

Next, the petitioners contend that Clabaugh may not receive damages for emotional distress because only a party to the contract may recover damages. *See* Restatement (Second) of Torts § 766 comment p (1979). We agree that under ordinary circumstances only parties to a contact may recover damages for intentional interference with the contract. However, we disagree with the petitioner's premise that Clabaugh was not a party to the Occidental contract.

Clabaugh was the general partner in a foreign limited partnership formed under the laws of California. Looking to California law, which we find appropriate under these circumstances,[8] a limited partnership is not generally a separate legal entity, but is only an association of individuals. *Donroy, Ltd. v. United States*, 301 F.2d 200, 206–07 (9th Cir.1962); *Bedolla v. Logan & Frazer*, 52 Cal.App.3d 118, 127, 125 Cal. Rptr. 59, 66 (1975). Within the association, management and control lies with the general partner. *Id.* at 126, 125 Cal.Rptr. at 66. Thus, if a California limited partnership is only an association of individuals, Clabaugh cannot be considered a separate party with respect to a contract entered into in the name of the limited partnership. *See also Battista v. Lebanon Trotting Ass'n*, 538 F.2d 111, 116 (6th Cir.1976) (under Ohio law, a partnership is not a separate legal entity, but is an aggregation of individuals; thus a general partner could not be held liable for interfering with a contact entered into by the partnership since he was a party to the contract).

In fact, Westfield named Clabaugh as a defendant in the original proceeding for specific enforcement of what Westfield alleged was a contract for the sale of land owned by RIA. Under these specific and narrow circumstances, we conclude that Clabaugh was a party to the Occidental contract for the purpose of bringing an action for intentional interference with contract.

## V.

Finally, the petitioners claim that the court of appeals erred in awarding prejudgment interest pursuant to section 5–12–102(1)(b), 2 C.R.S. (1989 Supp.), on lost profits since no money or property was withheld. In *Mesa Sand & Gravel Co. v. Landfill, Inc.*, 776 P.2d 362, 365–66 (Colo. 1989), we held that section 5–12–102(1)(b) is to be given a broad liberal construction in order to effectuate the legislative purpose of compensating parties for the loss of money or property to which they are entitled. The court of appeals did not err in determining that prejudgment interest for pecuniary damages caused by intentional interference with contract was appropriate under section 5–12–102(1)(b).

## VI.

Accordingly, we reverse the judgment of the court of appeals insofar as it affirmed the decision of the district court imposing liability on Westfield and the other petitioners, and return this case to the court of appeals with directions. We direct that the court of appeals remand this proceeding to the district court for further findings of

---

8. *See* section 7–62–901, 3A C.R.S. (1986) which provides:
 **Law governing foreign limited partnership.** Subject to the constitution of this state, the laws of the jurisdiction under which a foreign limited partnership is organized govern its organization and internal affairs and the liability of its limited partners, and a foreign limited partnership may not be denied registration by reason of any difference between those laws and the laws of this state.

fact and conclusions of law in accordance with this opinion. If the district court cannot make the required findings on the existing record, a new trial should be granted. We affirm the court of appeals with respect to the issue of prejudgment interest.

VOLLACK, J., dissents, and KIRSHBAUM, J., joins in the dissent.

Justice VOLLACK dissenting:

I respectfully dissent from the majority's holding remanding the case to the district court because it "did not weigh the factors contained in section 767 of the Restatement and made no finding that the interference by Westfield or the other petitioners was improper." Maj. op. at 1118. In my opinion the district court's order indicates that it considered Westfield's interference to be improper. I also disagree with the majority's holding that the district court failed to determine whether Westfield had a qualified privilege to interfere. Maj. op. at 1118. The district court's findings demonstrate that Westfield did not honestly believe it had a legally protected interest, and did not assert its claimed interest in good faith by proper means.

## I.

Edward Clabaugh is the sole general partner of, and a limited partner of, a limited partnership known as Rifle Investment Associates (RIA). RIA owned a tract of land of approximately 149 acres which was located northeast of the city of Rifle. During 1980 Clabaugh attempted on behalf of RIA to sell the land to either Westfield Development Company (Westfield) or Occidental Land Incorporated (Occidental). In July of 1980, Clabaugh was exchanging draft contract forms with both Westfield

and Occidental. On July 22, Clabaugh sent a draft contract to Kenneth Wasmann, Executive Vice–President of Occidental. On July 28, Clabaugh received a draft contract prepared by James O. Thorvilson, an attorney for Westfield. The draft contract was unsigned and contained the following provision:

IN WITNESS WHEREOF, the Purchaser [Westfield] has executed this contract as of the _____ day of July, 1980. Upon Seller's [RIA's] acceptance of this Contract as noted by Seller's [RIA's] execution on this page of the Addendum, this agreement shall constitute a binding contract between the parties hereto in accordance with the terms hereof.

On July 28, Clabaugh returned an unsigned modified version of the contract to Westfield. The modified version of the contract also contained a provision specifying that the agreement would become a binding contract upon RIA's execution of the agreement. At the trial on Westfield's complaint in 1981 the district court found that it was the intent of both parties, as expressed in the modified contract returned to Westfield by Clabaugh, that there would be no contract between RIA and Westfield until the contract was signed by both parties.

On July 28, 1980, James Rodgers, the President of Westfield,[1] signed the modified version of the contract and gave it to a Westfield attorney for delivery to Clabaugh. On the morning of July 29, 1980, Louis Conter,[2] an officer of Westfield, called Clabaugh to suggest several changes in the draft of the agreement Clabaugh had sent to Westfield. Clabaugh told Conter he could not agree to Conter's suggestions, and that he would have to think them over. Conter did not tell Clabaugh that Rodgers had signed the modified version of the agreement the night before.

1. The record reflects that, at the time these events took place, Rodgers had over twenty years of experience in the real estate business.

2. The record reflects that Conter became a licensed real estate broker in 1946, and that nego-

tiating real estate contracts had been a fairly continuous part of his job from 1946 until the date of this action. Clabaugh testified that all of his contacts and dealings concerning Westfield's desire to buy the property were with Conter.

Later on July 29, 1980, Clabaugh received from Occidental a deposit check for $25,000 and a letter signed by Kenneth Wasmann purporting to accept RIA's July 23 offer to sell the land. In response, Clabaugh sent a telegram to Westfield revoking any offer it may have made for sale of the property. On the afternoon of July 29, 1980, Charles Unsworth, an attorney for Westfield, called Clabaugh. Clabaugh informed Unsworth of the contents of the telegram Clabaugh had sent to Westfield earlier that day. Unsworth said that Westfield would like to buy the property, but he did not contend that there was a contract between RIA and Westfield. Westfield received Clabaugh's telegram at 5:15 p.m. on July 29, 1980.

On August 7, 1980, RIA and Occidental entered into a contract for the sale of the property. Rodgers then made the decision to commence the present action. Rodgers and Conter failed to fully and timely disclose to Westfield's attorneys that the agreement would not be binding without the signatures of both parties. Rodgers and Conter also failed to fully and timely disclose to Westfield's attorneys the communications between Westfield and Clabaugh on July 29. As part of the action Westfield recorded a lis pendens with the clerk and recorder of Garfield County, Colorado. RIA received the summons and complaint in this action on October 15, 1980. The district court found that Conter had the ability to have the lawsuit dismissed and the lis pendens released.

## II.

The majority holds that a party has only a qualified privilege to interfere with an existing contract by means of initiating litigation and filing pleadings and notice of a lis pendens. Maj. op. at 1117. The majority reasons that the privilege does not apply to an intentional interference with contract, maj. op. at 1117, but does apply where a litigant asserts a bona fide claim. Maj. op. at 1118. The majority holds that the district court's findings of fact and conclu-

sions of law are inadequate to support its judgment that Westfield is liable for intentional interference with contractual relations. Maj. op. at 1118. In my opinion the district court's findings of fact and conclusions of law were sufficient to support a judgment against Westfield for intentional interference with contractual relations. The majority also holds that a litigant has a qualified privilege to file notice of a lis pendens when (1) the interferer has, or honestly believes he has, a legally protected interest; (2) the interferer in good faith asserts or threatens to assert it; and (3) the assertion or threat is by proper means. Maj. op. at 1118. I would hold that the qualified privilege to file a notice of lis pendens did not apply to Westfield's filing of a notice of lis pendens against RIA.

In this case Westfield's recording of the notice of the lis pendens made it impossible for RIA to timely perform its side of its contract with Occidental, because RIA could not deliver merchantable title to the property to Occidental. Thus the trial court did not find that Occidental "breached" its contract with RIA, but properly found that Occidental "terminated" its contract with RIA. RIA counterclaimed against Westfield for intentional interference with contractual relations. Interference which constitutes the tort of intentional interference with contract must be both intentional and improper. See Restatement (Second) of Torts § 766A (1979).

The district court found that Westfield's conduct was intentional. The district court cited Restatement (Second) of Torts § 766 comment j for the proposition that "[t]he requirement for intent is satisfied if the actor does not act for the purpose of interfering with the contract but knows that the interference is certain or substantially certain to occur as a result of his action." The district court found that Westfield's conduct satisfied this definition of intent because Westfield "knew that by recording the lis pendens [it was] rendering title unmerchantable, which would prevent the performance of the contract between the RIA and [Occidental]."

The majority holds that the district court's order is inadequate because it does not weigh the factors contained in section 767 of the Restatement (Second) of Torts,[3] and does not conclude on the basis of those factors that Westfield's interference was improper. In my opinion the district court's order clearly indicates that the district court considered Westfield's conduct to be improper. The only effect of the majority opinion will be to require the district court to employ the language of section 767 of the Restatement in reaching the same result it has already announced. I believe we should affirm the district court order.

The district court's findings of fact and conclusions of law are adequate to support its judgment that Westfield's interference was improper, and therefore Westfield is liable for intentional interference with contractual relations. The district court's findings of fact noted that RIA's and Westfield's contract forms required both parties to sign the agreement before it could become a binding contract. Thus, Rodgers knew that his act of signing Clabaugh's modified version of the agreement did not create a contract between Westfield and RIA. The court also noted that although Clabaugh communicated RIA's revocation of its offer to several Westfield agents on July 29, none of those agents asserted that RIA and Westfield had a contract. Charles Unsworth, an attorney at Westfield who spoke to Clabaugh on July 29, merely said that Westfield would still like to buy the property.

The district court also found that the decision to commence this action and file the lis pendens was made by Rodgers, who knew that no contract existed between RIA and Westfield. Furthermore, the district court found that Rodgers failed to disclose to Westfield's attorneys that the agreement could only become a binding contract with the signatures of both parties. The district court also found that Rodgers failed to disclose to Westfield's attorneys the July 29 conversations between Clabaugh and Westfield's agents. In other words, the district court found that Rodgers concealed from his attorneys material information regarding the existence of a contract between Westfield and RIA.

The district court also found that Conter failed to disclose to Westfield's attorneys the dual-signature requirement in the agreement forms, as well as Westfield's communications to Clabaugh on July 29. The district court found that although Conter had the authority to have the lawsuit dismissed and the lis pendens released, he "ratified the maintenance of the lawsuit and lis pendens and actively participated in the maintenance of the lis pendens."

The district court found that all of Westfield's actions "were in wanton and reckless disregard of RIA's rights and feelings," and awarded exemplary damages against Westfield. The district court also found that the "[t]he only ground identified by Occidental for termination was the filing of this lis pendens by Westfield," and that "[t]he existence of the lis pendens was the causation of the termination of the contract by Occidental." RIA's attorney notified Westfield that its action had caused Occidental to terminate its contract with RIA, demanded the dismissal of the suit, and notified Westfield that it would hold Westfield responsible for damages resulting from its behavior.

The district court's conclusions of law also indicate that Westfield's actions were

3. As the majority notes, the Restatement identifies the following factors as relevant to a determination of whether an actor's interference is improper:

 (a) the nature of the actor's conduct,
 (b) the actor's motive,
 (c) the interests of the other with which the actor's conduct interferes,
 (d) the interests sought to be advanced by the actor,
 (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
 (f) the proximity or remoteness of the actor's conduct to the interference and
 (g) the relations between the parties.
Restatement (Second) of Torts § 767 (1979).

improper. The district court, relying on Restatement (Second) of Torts section 766 comment j, stated that interference is intentional if it is incidental to the actor's independent purpose, but known to him to be a necessary consequence of his action. The district court then concluded that "Westfield ... knew that by recording the lis pendens [it was] rendering title unmerchantable, which would prevent the performance of the contract between RIA and [Occidental]."

The district court's order, which contained sixty-four findings of fact and nine conclusions of law, taken as a whole supports the court's finding that Westfield is liable for intentional interference with contractual relations. The district court's order contains sufficient findings of fact and conclusions of law to support the conclusion that Westfield intentionally and improperly interfered with the contract between RIA and Occidental.

### III.

The majority also contends that because the district court did not consider whether Westfield had a qualified privilege to interfere, the case must be remanded for new findings of fact and conclusions of law.

Maj. op. at 1118. I disagree for the same reasons which lead me to conclude that the district court issued sufficient findings to conclude that Westfield is liable for intentional interference with contractual relations. The district court's findings of fact and conclusions of law sufficiently support the conclusion that Westfield's principals could not have honestly believed they had a legally protected interest, did not assert their interest in good faith, and did not do so by proper means. *McReynolds v. Short*, 115 Ariz. 166, 171, 564 P.2d 389, 394 (Ct.App.1977).

I would affirm the court of appeals unpublished opinion.

I am authorized to say that Justice KIRSHBAUM joins in this dissent.