54 F.3d 507
 28 UCC Rep.Serv.2d 622
 FIDELITY & DEPOSIT COMPANY, OF MARYLAND, Plaintiff-Appellant,
v.
FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for The
Merchants Bank, Defendant-Appellee,
James E. Rodgers; Frances D. Rodgers; Louis Conter;
Westfield Development Company, Defendants.
 No. 94-3571.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 10, 1995.
Decided May 10, 1995.
 
 Quentin L. Brown, Kansas City, MO, argued, for appellant. In addition the name of Robert A. Babcock, Kansas City, appears on the brief of the appellant.
 Daniel Harold Kurtenbach, Washington, DC, argued, for appellee. In addition the names of Ann S. Duross and Richard J. Osterman, Jr., Washington, DC, appear on the brief of the appellee.
 Before RICHARD S. ARNOLD, Chief Judge, MURPHY, Circuit Judge, and DAVIS,* District Judge.
 DIANA E. MURPHY, Circuit Judge.
 
 
 1
 Fidelity & Deposit Company of Maryland (Fidelity) brought this diversity action against The Merchants Bank (Merchants), James and Frances Rodgers, Louis Conter, and Westfield Development Company (Westfield) seeking reinstatement of a letter of credit issued by Merchants and canceled at Fidelity's request. Prior to its cancellation the letter had served as collateral for an appeal bond posted in a state case by James Rodgers, Conter, and Westfield. After Merchants entered receivership the Federal Deposit Insurance Corporation (FDIC) was substituted as a party in this action. Fidelity appeals from the entry of summary judgment in the district court[1] in favor of the FDIC and from the denial of its motion under Fed.R.Civ.P. 59(a) to amend the judgment.[2]
 
 I.
 
 2
 This case grows out of an earlier Colorado state court action brought in 1980 by Westfield against Rifle Investment Associates (RIA) and Edward Clabough, its general partner. Westfield sought specific performance of an alleged contract to purchase a tract of land owned by RIA and filed a notice of lis pendens. RIA and Clabough counterclaimed after a third party terminated a separate contract with RIA to purchase the property. The counterclaim alleged intentional interference with contract, malicious prosecution, and abuse of process against Westfield, its president James Rodgers, and Louis Conter, a Westfield officer.
 
 
 3
 After a bifurcated bench trial, the Colorado trial court found in favor of RIA and Clabough on Westfield's contract claim and on the counterclaim. It found that Westfield, Rodgers, and Conter had improperly interfered with RIA's contract with the third party purchaser, and entered judgment against them in the amount of $2,194,659.32.
 
 
 4
 Westfield, Rodgers, and Conter appealed the adverse judgment on the counterclaim to the Colorado Court of Appeals. As part of the appeal a bond was obtained from Fidelity which guaranteed payment to RIA and Clabough of up to $2,770,000 if the trial court judgment were "upheld, in whole or in part" upon appeal. The bond declared Fidelity's obligation "null and void" if the judgment were "reversed, in whole, or otherwise vacated as a result of the appellate proceedings."
 
 
 5
 James and Frances Rodgers had provided collateral for the bond in the form of an irrevocable letter of credit issued by Merchants and payable to Fidelity in the amount of $2,770,000. The letter of credit stated that it was governed by the Uniform Customs and Practice for Documentary Credits, 1983 Revision, International Chamber of Commerce Publication No. 400.[3] Merchants supplied the letter of credit pursuant to a loan agreement with the Rodgers. As part of the loan agreement, the Rodgers executed a promissory note in favor of Merchants, requiring repayment of any sums drawn on the letter of credit, and payment of certain fees and interest. The loan agreement provided that "upon cancellation of the Letter of Credit, and payment of all Indebtedness, the Note will be canceled" and the Rodgers' obligations would terminate. Collateral provided by the Rodgers included deeds of trust liens on property they owned, their interests as trustees under a trust document, James Rodgers' interests in six partnerships, and Westfield's interests in two limited partnerships.
 
 
 6
 The Colorado Court of Appeals affirmed the judgment against Westfield, Rodgers, and Conter, except for the rate of prejudgment interest applied by the district court. The Colorado Supreme Court granted review and issued its opinion on February 12, 1990, ruling that under Colorado law claimants who file a notice of lis pendens may hold a qualified privilege from claims of intentional interference with contract. Westfield Dev. Co. v. Rifle Inv. Assocs., 786 P.2d 1112, 1117 (Colo.1990). The supreme court reversed the judgment entered by the court of appeals and directed it to remand the matter to the district court for factual findings on whether the qualified privilege applied to the facts of the case, and whether Westfield's interference had been improper. Id. at 1118. It noted that if the district court concluded that such findings could not be made on the existing record, it should order a new trial. Id.
 
 
 7
 The material facts concerning the subsequent cancellation of the letter of credit are undisputed. Shortly after the Colorado Supreme Court issued its opinion, Eric Bronk, who represented Westfield, wrote to Fidelity seeking release of the bond and return of the letter of credit on the ground that the trial court's judgment against Westfield had been reversed. Deanna Freeman, an underwriter in Fidelity's Overland Park, Kansas office received Bronk's letter. She forwarded it and a copy of the supreme court opinion to Fidelity's main office in Baltimore, along with a memorandum stating that the Overland Park office was "not convinced they are sufficient closing evidence.... Please review the papers and advise if we may close our file and return the [letter of credit]."
 
 
 8
 Bronk's request was considered by at least five employees and officers at Fidelity's Baltimore office. Beatrice Hughes, a supervising surety underwriter, reviewed the Colorado decision and concluded that Fidelity could release the letter of credit because its obligation under the bond had been discharged. Hughes's supervisor agreed, and sought approval from James Keenan, Fidelity's general counsel. Keenan reviewed the supreme court opinion and agreed that the letter could be released. Because of the large amount of money involved, he referred the matter to Fidelity executive vice president Thomas Bosley, who also approved the release. Bosley passed the matter on to Fidelity's chief executive officer for final approval, which came on March 12, 1990. That same day the Baltimore office directed the Missouri office to release the bond and return the letter, and Deanna Freeman advised Eric Bronk that the bond would be canceled.
 
 
 9
 Bronk contacted Allen Blair, the counsel for Merchants, on March 12 and informed him of the Colorado Supreme Court opinion.[4] On March 14, Blair telephoned Fidelity to inquire about the status of the letter of credit.[5] The following day he sent Fidelity a letter requesting that it return the letter of credit. Unbeknownst to Blair, Fidelity had already determined that it could return the letter of credit, and had mailed it to Merchants on March 14.
 
 
 10
 Merchants received the letter of credit on March 15, along with a note explaining that the obligation underlying the letter had been satisfied. Merchants stamped the letter of credit "canceled," and removed it from the bank books that same day. Some time shortly thereafter it informed James and Frances Rodgers that the letter of credit had been canceled. Merchants also returned to Fidelity a verification form indicating the letter had been canceled, which Fidelity received on March 22.
 
 
 11
 Fidelity did not inform RIA and Clabough of its decision to release the appeal bond and return the letter of credit. On March 23, 1990, counsel for RIA and Clabough wrote to Fidelity, James Rodgers, and Louis Conter, stating their belief that the appeal bond remained in effect while the trial court determined whether it should make new findings from the existing record. RIA and Clabough then moved for an order in the Colorado district court preventing release of the bond. The court granted the motion on March 26, enjoining Fidelity from releasing or interfering with the bond or the letter of credit and ordering reinstatement of the bond in the event Fidelity had already acted. The court later ruled that the bond would remain in effect until such time as it ordered a new trial.
 
 
 12
 On March 30 Fidelity contacted Merchants, stating that the return of the letter had been in error and requesting it be reinstated and returned to Fidelity. Merchants refused. Several months later, in June 1990, Fidelity brought this action against Merchants and the individual defendants seeking rescission of the alleged agreement between Merchants and Fidelity to cancel the letter of credit and indemnification from Westfield, the Rodgers, and Conter for any money it might be required to pay on the bond.[6]
 
 
 13
 The district court granted Merchants summary judgment on November 23, 1992, concluding that reinstatement of the letter of credit was not possible under Missouri law because Fidelity had returned it pursuant to a mistake of law rather than a mistake of fact. After the FDIC was appointed as receiver, the court stayed the proceedings against Merchants to permit Fidelity to exhaust the receivership claims process mandated by 12 U.S.C. Sec. 1821. During the stay, which did not apply to the indemnification claims against the Rodgers, Conter, and Westfield, Fidelity obtained default judgments against those defendants.
 
 
 14
 The district court lifted the stay in September 1993, after the FDIC denied Fidelity's claim for reimbursement of the money it had paid on the bond. Fidelity then moved for reconsideration and amendment of the November 1992 order on the ground that the equities required reinstatement of the letter of credit. The court granted the motion for reconsideration but declined to amend the judgment, concluding that the equities did not favor reinstatement. Final judgment was entered on September 28, 1994, and Fidelity filed this timely appeal.
 
 
 15
 Fidelity asserts the court erred in concluding that the return of the letter of credit was a mistake of law. According to Fidelity, the return was a mistake of fact or a mixed mistake of fact and law for which rescission is permitted. Fidelity also argues that it is entitled to equitable relief because Merchants did not change its position in reliance on the cancellation of the letter.
 
 II.
 
 16
 We review a district court's grant of summary judgment de novo, applying the same standards as the district court. Dillaha v. Yamaha Motor Corp., 23 F.3d 1376, 1377 (8th Cir.1994). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id.; Fed.R.Civ.P. 56(c). The mere existence of some alleged factual dispute will not defeat a properly supported summary judgment motion; the dispute must be genuine. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; Matsushita Elec. Indus. v. Zenith Radio, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The record must, however, be read in the light most favorable to the nonmoving party. Celotex v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986).
 
 
 17
 Missouri courts follow the majority of states regarding rescission of a contract based on mistake.[7] Rescission is available as an equitable remedy if the parties acted under a mistake of fact going to the essence of the contract, but not if the mistake was one of law. State Highway Comm'n v. Schwabe, 335 S.W.2d 15 (Mo.1960); Employers' Indem. Corp. v. Garrett, 38 S.W.2d 1049, 1054 (Mo.1931); In re Estate of Hysinger, 785 S.W.2d 619, 624 (Mo.Ct.App.1990). "A mistake of law occurs where a person is truly acquainted with the existence or nonexistence of facts, but is ignorant of, or comes to a erroneous conclusion as to, their legal effect." American Motorists Ins. Co. v. Shrock, 447 S.W.2d 809, 811 (Mo.Ct.App.1969) (quoting 70 C.J.S. Payment Sec. 156).
 
 
 18
 Fidelity argues that its mistake was one of fact, or mixed fact and law, for which Missouri courts also provide relief. See State Sav. Trust Co. v. Spencer, 201 S.W. 967, 970 (Mo.Ct.App.1918). According to Fidelity the mistake arose from its comparison of the language in the Colorado Supreme Court decision "reversing" the appeals court to language in the bond stating that the obligation ended if the case were "reversed, in whole, or otherwise vacated."
 
 
 19
 Fidelity suggests that its mistaken conclusion about its obligation under the bond arose from a simple comparison of the words in the Colorado Supreme Court opinion with the words in the appeal bond. It is undisputed that no less than six Fidelity employees and officers examined the terms of the bond, evaluated the legal effect of the Colorado decision, and concluded that the bond could be released and the letter of credit returned. We agree with the district court that Fidelity decided to return the letter based on its mistaken belief about the legal effect of the supreme court decision. Its mistake was therefore one of law.
 
 
 20
 Fidelity also relies on Missouri Insurance Guaranty Association v. Wal-Mart Stores, Inc., 811 S.W.2d 28 (Mo.Ct.App.1991), to support its assertion that its mistake was one of fact. In that case the guaranty association brought an action seeking return of insurance proceeds it had paid to Wal-Mart prior to a court decision finding the insurance contract between Wal-Mart and the guaranty association's predecessor void because WalMart had wrongfully colluded with an insurance agent to lower premiums. The court upheld the association's right to reimbursement and rejected Wal-Mart's estoppel argument because it had not shown detrimental reliance on the association's initial decision to pay the disputed proceeds. In the court's discussion it stated in dicta that the payments made to Wal-Mart had been "made pursuant to the mistaken fact that the policies were legally enforceable." Id. at 34. Fidelity argues this statement demonstrates that a party acts under a mistake of fact when it errs in determining its legal obligations. This argument goes beyond the holding of the case, however, and is in conflict with other Missouri discussions of the distinction between mistakes of fact and of law. See, e.g., Shrock, 447 S.W.2d at 811 (defining an erroneous conclusion as to the legal effect of given set of facts as a mistake of law).
 
 
 21
 The conclusion that Fidelity's mistake was one of law does not end the inquiry. Under Missouri law, equity will relieve a party from a mistake of law where there is an "independent equity, as where the mistake is induced, or is accompanied by inequitable conduct of the other party." Western Casualty & Sur. v. Kohm, 638 S.W.2d 798, 800 (Mo.Ct.App.1982); Handley v. Lyons, 475 S.W.2d 451, 463 (Mo.Ct.App.1971); see also Glover v. Metropolitan Life Ins. Co., 664 F.2d 1101, 1104 (8th Cir.1981) (applying Missouri law).
 
 
 22
 A review of the record in the light most favorable to Fidelity reveals no independent equity that would permit reinstatement of the letter of credit. Fidelity can point to no inducement or inequitable conduct on the part of Merchants. It reached the erroneous conclusion that its obligation under the bond had ended on its own, without consultation with Merchants. Merchants did not urge Fidelity to return the letter of credit until Fidelity's decision had already been made and the letter had been mailed to Merchants. Fidelity was aware of all material facts, followed its established procedures, and made its decision after deliberation by six separate employees and officers, including Fidelity's general counsel, executive vice president, and chief executive officer. These circumstances do not amount to an independent equity that should lead to reinstatement of the letter of credit.
 
 
 23
 Fidelity also asserts that reinstatement is appropriate under general equitable principles because Merchants did not change its position in reliance on cancellation of the letter of credit. It points out that Merchants had not released any of the Rodgers' collateral when it was informed of Fidelity's mistake, and that the record shows the return of only one item of collateral since that time. As the FDIC points out, however, Merchants informed James and Frances Rodgers that the letter had been canceled soon after receiving the letter from Fidelity. Had Merchants acquiesced in Fidelity's demand that the letter be reinstated, it might have faced a legal challenge from the Rodgers on the basis that their obligation to repay ended when Merchants canceled the letter.
 
 
 24
 Moreover, it is far from certain whether a canceled letter of credit may be reinstated under the Uniform Custom and Practices for Documentary Credits (UCP). The UCP does not refer to reinstatement of letters of credit, but it explicitly prohibits amendment of the terms of an irrevocable letter without the consent of the issuing bank and the beneficiary. UCP art. 10(d); see also Leasamerica Corp. v. Norwest Bank Duluth, 940 F.2d 345, 348 (8th Cir.1991) (stating that article 10 prohibits alteration of the terms of a letter of credit without the consent of the issuing bank). Reinstatement of a letter after cancellation would constitute an additional term, and is possible only with the consent of both Merchants and Fidelity.
 
 
 25
 Reinstatement of the letter under the circumstances presented would also undermine the policy which separates a letter of credit from the underlying transaction for which the letter was issued. See Alaska Textile Co. v. Chase Manhattan Bank, 982 F.2d 813, 815 (2nd Cir.1992) (stating that a letter of credit is independent from the contract for which the credit was issued); Marino Ind. Corp. v. Chase Manhattan Bank, 686 F.2d 112, 115 (2d Cir.1982) (same). Because the letter of credit is separate from the underlying transaction, the issuing bank must honor a proper draw request without considering if the parties have performed under their contract. Reinstatement of the canceled letter here would violate that principle by placing on the issuing bank the burden of determining whether the beneficiary's obligations to its customer has ended. Cf. 12 C.F.R. Ch. 1, Sec. 7.7016 (guidelines stating that a bank issuing a letter of credit "must not be called upon to determine questions of fact or law at issue between the account party and the beneficiary."). Fidelity, not Merchants, should bear the burden of determining if its obligation under a bond had ended. It is in the business of issuing appeal bonds and is in a better position to know and protect its rights.
 
 
 26
 The mistake which caused Fidelity to return the letter of credit to Merchants was one of law so rescission would be available under Missouri law only if the equities favored Fidelity. Fidelity decided itself to return the letter after careful consideration by no less than six employees and officials. Merchants did nothing wrong, and it did not engage in misconduct or induce Fidelity to act. The equities do not favor reinstatement of the letter of credit.
 
 
 27
 For these reasons the judgment of the district court is affirmed.
 
 
 
 *
 The HONORABLE MICHAEL J. DAVIS, United States District Judge for the District of Minnesota, sitting by designation
 
 
 [1]
 Hon. D. Brook Bartlett, United States District Judge for the Western District of Missouri
 
 
 [2]
 Fidelity received default judgments in the district court against the individual defendants and Westfield on its claims against them for indemnification for the amount it paid out under the bond. The Rodgers, Conter, and Westfield are not parties to this appeal
 
 
 [3]
 Under Missouri law, the Uniform Commercial Code does not apply to a letter of credit which states that it is governed by the Uniform Customs and Practice for Documentary Credits. Anchor Centre Partners, Ltd. v. Merchantile Bank, 803 S.W.2d 23, 34 (Mo.1991)
 
 
 [4]
 Fidelity contends that Merchants was aware of the Colorado Supreme Court decision before March 12, 1990, suggesting Bronk contacted Blair before that date. It has produced no evidence to support this assertion or demonstrated why that fact, if proven, would raise a genuine issue of material fact concerning whether Merchants influenced Fidelity's decision to return the bond
 
 
 [5]
 Bronk spoke with Blair again on March 14, after Blair had contacted Fidelity, and informed Blair that he had asked Fidelity to return the letter of credit
 
 
 [6]
 On July 16, 1990 the Colorado trial court issued supplemental findings of fact and conclusions of law, and ordered entry of judgment in favor of RIA and Clabough on the counterclaim. The court of appeals affirmed, and the Colorado Supreme Court denied review. In 1992 Fidelity paid $2,770,000 to satisfy its obligation under the bond
 
 
 [7]
 The parties agree that Missouri law controls this action