**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

PAN AMERICAN LIFE INSURANCE
COMPANY,
Plaintiff-Appellant,

v.

BLUE CROSS AND BLUE SHIELD OF
SOUTH CAROLINA,
Defendant-Appellee,                                               No. 96-2081

and

RYOBI AMERICAN CORPORATION;
RICHARD MAYOTTE, SR., as
Conservator for Richard Mayotte,
Jr.,
Defendants.

PAN AMERICAN LIFE INSURANCE
COMPANY,
Plaintiff-Appellee,

v.

BLUE CROSS AND BLUE SHIELD OF
SOUTH CAROLINA,
Defendant-Appellant,                                              No. 96-2168

and

RYOBI AMERICAN CORPORATION;
RICHARD MAYOTTE, SR., as
Conservator for Richard Mayotte,
Jr.,
Defendants.

Appeals from the United States District Court
for the District of South Carolina, at Greenville.
Henry M. Herlong, Jr., District Judge.
(CA-95-3041-6-20)

Argued: October 2, 1997

Decided: October 23, 1997

Before LUTTIG and MOTZ, Circuit Judges, and MICHAEL,
Senior United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** William Stevens Brown, V, NELSON, MULLINS,
RILEY & SCARBOROUGH, L.L.P., Greenville, South Carolina;
Peter David Hooper, JACKSON, LEWIS, SCHWITZLER & KRUP-
MAN, St. Petersburg, Florida, for Appellant. Stephanie Holmes Bur-
ton, GIBBES, GALLIVAN, WHITE & BOYD, P.A., Greenville,
North Carolina, for Appellee. **ON BRIEF:** George K. Lyall, NEL-
SON, MULLINS, RILEY & SCARBOROUGH, L.L.P., Greenville,
South Carolina, for Appellant. Don S. Clardy, GIBBES, GALLIVAN,
WHITE & BOYD, P.A., Greenville, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

These appeals involve a dispute between two insurance companies, Pan American Life Insurance Company, which provided a group health insurance policy that served as Ryobi American Corporation's employee benefit plan throughout 1994 and Blue Cross and Blue Shield of South Carolina, which provided a policy that served as that plan during 1995. The issue is which insurer is responsible for certain medical benefits claimed by Richard Mayotte, Jr., a participant in the Ryobi plan. Resolution of this question depends on the meaning and validity of a provision in Pan Am's policy, whereby Pan Am contracted to continue benefits for twelve months after cessation of insurance if an insured was totally disabled when his insurance ceased. The district court concluded that this provision was valid and, pursuant to it, Pan Am was responsible for paying the benefits at issue here. We affirm.

I.

Throughout 1994, Ryobi funded its employment benefits plan, a plan governed by the Employment Retirement Income Security Act, 29 U.S.C. § 1000 et seq. (1974) ("ERISA"), by purchasing group health insurance from Pan Am. The Pan Am policy provides in pertinent part:

> If an insured person is totally disabled when his insurance ceases, benefits will be extended for the twelve (12) months following cessation of insurance and only for the ailment causing the illness.

(Emphasis added).

According to Pan Am, the policy included this provision only because of a requirement of South Carolina law. Section 38-71-760 of the South Carolina Code requires every group benefits policy to "provide a reasonable provision for extension of benefits in the event of total disability at the date of discontinuance of the group policy." S.C. Code Ann. § 38-71-760(f) (1991).

3

Until September 15, 1994, Ryobi employed Mayotte and he was a participant in this ERISA plan; however, on that date the company terminated Mayotte's employment. Thereafter, Mayotte elected to continue his coverage under Ryobi's plan pursuant to the amendments to ERISA contained in the Consolidated Omnibus Budget Reconciliation Act ("COBRA"). 29 U.S.C. § 1161 et seq. (1986). The day after his termination, September 16, 1994, Mayotte was involved in an accident and, consequently, suffered serious closed head injuries. For the remainder of 1994, Pan Am provided Mayotte with the requisite benefits claimed under the Plan, because Mayotte had elected to continue his coverage pursuant to COBRA.

On December 31, 1994, however, Ryobi ended its relationship with Pan Am and entered into an agreement with Blue Cross. Effective January 1, 1995, Ryobi funded its ERISA plan by purchasing a group health insurance policy from Blue Cross. At issue in this case is the responsibility for payment of Mayotte's benefits from January 1, 1995 until December 31, 1995. Pan Am has paid these benefits under a reservation of rights to seek repayment.

Pan Am brought this action seeking a declaratory judgment to determine which insurer -- itself or Blue Cross-- is responsible for providing these benefits to Mayotte. Pan Am argues that Blue Cross is responsible for Mayotte's benefits after December 31, 1994, while Blue Cross maintains that the twelve-month extension of benefits provision in the Pan Am policy requires Pan Am to fund Mayotte's benefits thru 1995. The parties filed cross motions for summary judgment.

After initially granting summary judgment to Pan Am, the district court reversed itself and held Blue Cross entitled to summary judgment. The court ruled that Pan Am's extension of benefits provision obligated Pan Am to continue to provide benefits to Mayotte during 1995 and that this provision violated neither law nor public policy.

On appeal, Pan Am argues that the district court erred in interpreting the terms of its contract with Ryobi to require Pan Am to pay benefits to Mayotte after December 31, 1994. Alternatively, Pan Am asserts that, even if the district court's interpretation of the language of the contract was proper, enforcement of the contractual extension of benefits provision violates law and public policy.

4

We review de novo a district court's decision to grant summary judgment. Denzler v. Questech, Inc., 80 F.3d 97, 101 (4th Cir. 1996); Fritiofson v. Alexander, 772 F.2d 1225, 1239 (4th Cir. 1985).

II.

First, we consider the meaning of the extension of benefits provision in the Pan Am policy. In construing the policy language, we apply standard contract principles and look to the plain, unambiguous language of the policy in its ordinary sense. Wheeler v. Dynamic Engineering, Inc., 62 F.3d 634, 638 (4th Cir. 1995).

The Pan Am policy provides in pertinent part "[i]f an insured person is totally disabled when his insurance ceases, benefits will be extended for the 12 months following the cessation of insurance . . . ." (Emphasis added). Pan Am asserts that the term "insurance ceases" must be construed by examining the remainder of the policy. In particular, Pan Am points to the section of the policy concerning termination of insurance:

>  Employee insurance will cease on the earliest of:

. . .

>  b. the date his employment with the Policyholder ceases
>  . . . .

(Emphasis added). Based on this definition as to when "insurance will cease," Pan Am contends that, under the terms of its policy, Mayotte's "insurance ceased" when his employment with Ryobi was terminated on September 15, 1994. On that day, according to Pan Am, Mayotte became eligible for COBRA coverage, but, technically, his insurance had ceased under the policy. Because Mayotte became disabled September 16, 1994, the day after his discharge, Pan Am maintains that his injury occurred one day after his "insurance ceased." Therefore, Pan Am concludes that even if the "Extension Date to Total Disability" provision of the contract is enforceable, it does not apply to Mayotte.

A careful reading of the policy reveals the flaw in Pan Am's argument. The "Termination of Insurance" provision of the policy, in

5

addition to stating that an employee's insurance ceases on "[t]he date his employment with the Policyholder ceases," also expressly notes that there are "exceptions" to this rule, including those contained in the "Continuance of Insurance" provision of the policy. The "Continuance of Insurance" provision states that "benefits may continue past the day it [sic] would cease;" the policy later identifies COBRA as an avenue by which an individual can ensure that his benefits will continue. Thus, by its own language, the policy clearly provides an exception to cessation of insurance upon cessation of employment, if a former employee opts for "continuance of insurance." Because Mayotte indisputably choose "continuance of insurance," his insurance did not "cease" on the day his employment ceased.

Pan Am concedes as much in its complaint. There, Pan Am acknowledges that its policy served as the ERISA Benefits Plan for Ryobi's employees until the end of 1994 and admits that Mayotte "continued as a participant" in this Plan after Mayotte's employment terminated on September 15, 1994. Thus, by Pan Am's own admissions Mayotte's insurance did not cease when his employment ceased.

We note that if Pan Am's present interpretation of its policy (which it concedes served as Ryobi's ERISA Plan) were adopted, the Plan would not comply with COBRA. Under Pan Am's interpretation, Ryobi's ERISA plan would provide greater benefits to non-COBRA plan participants than to those covered because of COBRA, in that benefits would not continue for one year for an individual totally disabled while covered because of COBRA but would continue for a year for other plan participants who become totally disabled while covered. This is contrary to COBRA, which requires coverage for COBRA participants to be "identical" to that of other plan participants. 29 U.S.C. § 1162(1).

In sum, the district court correctly concluded that (1) Pan Am "obligated" itself under its policy to continue to pay benefits to Mayotte for twelve months after his insurance ceased and (2) that his insurance did not cease until December 31, 1994.

III.

Alternatively, Pan Am contends that even if the district court's interpretation of the language of the contract was proper, enforcement of the contractual provision at issue here is illegal or contrary to public policy.

6

A.

Pan Am maintains that the sole reason it included the extension of benefits provision in its policy was to comply with state statutory requirements. South Carolina law requires a group policy to provide a twelve-month extension of benefits if an insured is totally disabled when an employer changes insurers. S.C. Code Ann.§ 38-71-760(f). The prior insurer only remains responsible to continue any coverage for which it was obligated at the time of the change of insurers. § 38-71-760(l). Pan Am argues that ERISA preempts § 38-71-760 and for this reason, the extension of benefits provision required by § 38-71-760 is contrary to law and unenforceable.

The district court held that the extension of benefits provision remained a viable component of the Pan Am policy. The court reasoned, even if ERISA does preempt § 38-71-760, and so the parties were mistaken as to the effect of that state statute, this did not make the contractual extension of benefits provision contrary to law or unenforceable because a mistake of law does not affect the interpretation of a contract. See, e.g., Fidelity & Deposit Co. of Maryland v. F.D.I.C., 54 F.3d 507 (8th Cir. 1995); Aydt v. DeAnza Santa Cruz Mobile Estates, 763 F.Supp. 970 (N.D.Ill. 1991). Pan Am points out that this is true only if contractual terms have been voluntarily and freely included in a contract. 17A Am. Jur.2d Contracts § 238 (2d ed. 1991). Pan Am maintains that because it included the extension of benefits provision to comport with § 38-71-760, the provision was not included in the policy voluntarily.

The fundamental difficulty with this argument is Pan Am's failure to cite any evidence that the parties did not freely contract and voluntarily agree to include the extension of benefits provision in the policy. Since there is no evidence in the record that the parties did not voluntarily agree to the terms of the policy -- including the extension of benefits provision -- the district court correctly concluded that the policy should be enforced, even if ERISA preempts§ 38-71-760.[1]

_____

[1] Indeed, it is not even clear that the parties included the extension of benefits provision solely because of § 38-71-760, as Pan Am asserts. Unlike the cases upon which Pan Am relies, see City of Cleveland v. Clement Bros. Constr. Co., 65 N.E. 885 (Ohio Ct. App. 1902); People v. Coler, 59 N.E. 716, 723 (N.Y. Ct. App. 1901), the Pan Am policy does

7

B.

Pan Am's contention that the extension of benefits provision violates public policy is equally meritless.

An agreement is unenforceable "if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement." Town of Newton v. Rumery, 480 U.S. 386, 392 (1986). Whether an agreement violates public policy is decided on a case-by-case basis. Id. We have previously held that public policy can only be implicated in interpreting a contract where "it is explicit, well defined and dominant, and ascertainable by reference to the laws and legal precedents and not from the general considerations of supposed public interests." L & E Corp. v. Days Inn of America, Inc., 992 F.2d 55, 58 (4th Cir. 1993). Pan Am makes two arguments as to why enforcement of the extension of benefits provision violates public policy.

First, Pan Am asserts that enforcement of this provision would impede legislative goals. Pan Am maintains that because ERISA preempts § 38-71-760, enforcing a contract provision mandated by § 38-71-760 would hinder Congress' goal in enacting ERISA-- to regulate the entire field of employee benefit plans and preempt state laws concerning employee benefit plans. See Sejman v. Warner-Lambert Co., Inc., 845 F.2d 66, 68 (4th Cir. 1988) (describing ERISA as "the most sweeping federal preemption statute ever enacted by Congress"). However, even if ERISA preempts South Carolina Code § 38-71-760, this does not demonstrate that the policy provision violates public policy. Congress' interest in regulating the entire field of employee benefit plans justifies preemption of state laws but does not justify rendering contractual agreements invalid. Rather, parties are certainly

_____

not state that this provision was included in order to comply with a state law mandate. In fact, the policy does not even reference state law as inspiration for the extension of benefits provision. Yet, the insurer surely knew how to do this; witness the fact that the immediately prior policy provision expressly explains that "state law" provides for a policy benefit.

8

free to undertake contractual obligations in addition to those mandated by federal law.

Pan Am also contends that enforcement of the extension of benefits provision contravenes public policy because it disrupts the parties' justified expectations. Pan Am charges that Blue Cross does not have a justified expectation in avoiding responsibility for Mayotte's benefit in light of the fact that Blue Cross has received premium payments from Mayotte for continuation coverage. In addition, Pan Am maintains that since Mayotte has made premium payments to Blue Cross, he has no justified expectation that Pan Am bear responsibility for his medical expenses.

This argument is misguided. Pan Am's policy requires it to extend benefits for twelve months "only for the ailment causing the illness." The policy term provides explicitly that the twelve month extension of benefits provision "applies only to the disabled person and no premium is due." Thus, Pan Am recognized from the inception that it might have to extend benefits to disabled insureds for twelve months and agreed to charge no premium for providing such benefits. The payments Mayotte is currently making to Blue Cross are presumably for medical treatment that may be required for illnesses or injuries other than those causing his disability, or for coverage of dependents.

IV.

For all of these reasons, the judgment of the district court in No. 96-2081 is

AFFIRMED.[2]

_____
**2** In view of our holding, we need not reach the issue raised in Blue Cross' cross appeal -- whether ERISA preempts S.C. Code Ann. § 38-7-760. Accordingly, we dismiss the cross appeal, No. 96-2168, as moot.

9